Gabriel Colwell (SBN 216783)
gabriel.colwell@squirepb.com
Squire Patton Boggs (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California  90071
Telephone:     +1 213 624 2500
Facsimile:     +1 213 623 4581

Attorneys for Defendant
WALTER KONIGSEDER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-00-000517 |
| Plaintiff, | **DEFENDANT WALTER KONIGSEDER'S MOTION FOR PRETRIAL RELEASE** |
| v. | |
| WALTER KONIGSEDER, | Magistrate Judge:  Jacqueline Corley |
| Defendant. | Dept: 15<br>Place: Courtroom F<br>Date: October 17, 2019<br>Time: 10:30 a.m. |

I.      **INTRODUCTION**

Defendant Walter Konigseder ("Konigseder" or "Defendant") appears before this Court voluntarily.  Although he was arrested unexpectedly on a warrant that he did not know was pending, Mr. Konigseder voluntarily waived extradition from Mauritius to the United States.  Mr. Konigseder has no inclination nor ability to flee and provides a package of conditions to assure the Court of his future appearance.  In support of detention, the Government relies upon stereotype presumptions and a 20-year-old indictment that does not reflect the present particular circumstances of Mr. Konigseder.

The Bail Reform Act of 1984 commands that a defendant is entitled to bail pending trial unless "*no condition or combination of conditions* will reasonably assure the appearance of the

010-8866-4456/1/AMERICAS

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

1   person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e)

2   (emphasis added). To the extent conditions are appropriate, a judicial officer must take care to

3   select "*the least restrictive . . .* condition, or combination of conditions" that will reasonably

4   assure appearance. *Id.* at § 3142(c)(1)(B) (emphasis added).

5   Because a combination of conditions will reasonably assure Mr. Konigseder's appearance

6   at trial, both the Bail Reform Act and the Constitution prohibit pretrial detention of Mr.

7   Konigseder. As the Supreme Court has admonished, "[i]n our society liberty is the norm, and

8   detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*,

9   481 U.S. 739, 755 (1987).

10   The following key facts mitigate in favor of pretrial release for Mr. Konigseder.

11   **A.    Defendant Has No Motive to Flee**

12   Mr. Konigseder was arrested on August 9, 2019 in Mauritius and has been in confinement

13   since then for, as of today, a total of **69 days**.  By contrast, Informix's CEO of the company at

14   issue in the indictment, Phillip E. White, was convicted and sentenced to a grand total of **60 days**

15   in prison, and $10,000 fine, for allegedly more egregious conduct.  (*See* <u>Exhibit A</u> related case

16   *USA v. White*, Case No. 02-CR-00375-CRB at Dkt. No. 116.)

17   In the *White* case, the Government agreed to an 11(c)(1)(C) with a cap at Level 10

18   because it was a zero loss case, or more specifically that "***any loss to shareholders cannot***

19   ***reasonably be estimated under Guideline § 2F1.1(b)(1). The parties agree that the appropriate***

20   *sentence is one that is permitted under **Zone B, Level 10** or lower, and that each of them is free to*

21   *argue for a specific sentence within or below that Level.*" (*See* <u>Exhibit B</u>, Memorandum of Plea

22   Agreement ["MPA"] at ¶6 , *USA v. White*, Case No. 02-CR-00375-CRB.)  The Government's

23   sentencing memo agreed with the Presentencing Report (PSR) that the Offense Level was 8

24   (<u>Exhibit C</u>, United States Sentencing Memo at p.9:16-10:5, *USA v. White*, Case No. 02-CR-

25   00375-CRB) and argued for 3 months confinement (*id.* at p. 1:18-19).  Judge Breyer imposed a

26   sentence of 60 days confinement and a 10,000 fine.

27   As of the time of this filing, Defendant's counsel has not yet had an opportunity to review

28   the Pretrial Services' bail report, but it is undisputed that Mr. Konigseder has never been charged

MOTION FOR PRETRIAL RELEASE
CR-00-000517

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

1   with any other crimes – either before or after the instant indictment in 2000 – and, as such, he will

2   receive a Criminal History Category of I.  Given that Mr. Konigseder has already served a longer

3   term of confinement than the CEO of the US public company at issue in the indictment, he has no

4   motive to flee because the Government has already agreed that this is zero loss case.  As such,

5   Mr. Konigseder's likely offense level in the event of a plea would be 8 or, if this proceeds to trial

6   and the Government prevails, 10.  In either event, Mr. Konigseder's exposure is very limited and

7   not sufficient motive to flee and remain a fugitive for the rest of his life.

8       **B.**    **Defendant Did Not Previously Abscond**

9       The Government's position is that Mr. Konigseder has been a fugitive since his indictment

10   in 2000, but that certainly has not been Mr. Konigseder's perspective on the matter. He

11   cooperated with the German authorities in and around 2003-2004, who advised him that the

12   matter was done and that he could travel freely, which he has done for the last 15 years, including

13   traveling to close US allies such as the United Kingdom, France and other countries.

14       **C.**    **Defendant is in Frail Health and Not a Flight Risk**

15       Mr. Konigseder is 67 years old and is in frail heath due to a number of serious medical

16   conditions, including carotoid artery stenosis with constriction, an aneurysm of the popliteal

17   artery and grade 3 hypertension. His medical records have been previously provided to Pretrial

18   Services and the Government.  A recent evaluation by a vascular surgeon in Mauritus on 9/25/19

19   states that "patient needs Blood Pressure measurement 3 to 4 times daily so as to adjust his

20   medication promptly. He needs expanded walk for a minimum of 1 to 1.5 hours 2 to 3 times daily

21   in order to keep a good arterial flow.  Bisoprolol 2.5 (1-0-0), Dafiri HTC 5/160/12.5 (1-0-0). This

22   treatment should not be interrupted under any circumstances. And, most importantly, the left

23   lower limb should not be exposed to any kind of trauma as there is a high risk of limb

24   amputation.".  Mr. Konigseder is not going to be able to receive the necessary medical treatment

25   while in pretrial confinement at Santa Rita Jail, and is at risk of losing his left leg or worse as a

26   result.

27       Mr. Konigseder is being held in an open bay style cell with 30 other inmates at Santa Rita,

28   that the facility has substituted his medication.  The 45-hour travel and then 12 hour plus in-

MOTION FOR PRETRIAL RELEASE
CR-00-000517

1    processing has had a deleterious impact on his already frail health. He also has only limited

2    English language capabilities and is having difficulties communicating while incarcerated.

3        Given his frail health, Mr. Konigseder is not a flight risk. He has surrendered his passport

4    and could not return to Germany without it.  Nor, could he potentially travel such a distance

5    without medical assistance without serious risk of great bodily harm or death.

6        Although we submit that the factors discussed below are sufficient to warrant immediate

7    release—even if they may be considered insufficient—there certainly is some combination of

8    available bail conditions that would reasonably assure Mr. Konigseder's appearance at trial.

9    **II.      PRETRIAL DETENTION IS APPROPRIATE ONLY UPON A FINDING**

10   **THAT MR. KONIGSEDER IS A FLIGHT RISK, AND IF SO, THEN THE COURT MUST**

11   **IMPOSE THE LEAST RESTRICTIVE CONDITIONS OF RELEASE THAT WILL**

12   **REASONABLY ASSURE HIS APPEARANCE.**

13       The U.S. Supreme Court has previously explained that "from the passage of the Judiciary

14   Act of 1789 . . . to the present federal law has unequivocally provided that a person arrested for a

15   non-capital offense shall be admitted to bail. This traditional right to freedom before conviction

16   permits the unhampered preparation of a defense, and serves to prevent the infliction of

17   punishment prior to conviction. Unless this right to bail before trial is preserved, the presumption

18   of innocence, secured only after centuries of struggle, would lose its meaning." *Stack v. Boyle*,

19   342 U.S. 1, 4 (1951) (emphasis in original, internal citations omitted). But it is not only the

20   presumption of innocence that requires pretrial release. The Supreme Court has acknowledged

21   that release is necessary to preserve important Fifth Amendment Due Process rights, as well as

22   the rights guaranteed under the Sixth Amendment. *See Bandy v. United States*, 81 S. Ct. 197, 198

23   (1960) ("The wrong done by denying release is not limited to the denial of freedom alone.  In

24   case of reversal, he will have served all or part of a sentence under an erroneous judgment.

25   Imprisoned, a man may have no opportunity to investigate his case, to cooperate with his counsel,

26   to earn the money that is still necessary for the fullest use of his right to appeal.").

27       Consistent with these basic principles, the Bail Reform Act presumes release unless the

28   government meets its burden of proving that Mr. Konigseder is a serious flight risk and that no

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

MOTION FOR PRETRIAL RELEASE
CR-00-000517

1   combination of conditions would reasonably assure his appearance at trial. *See* 18 U.S.C. §

2   3142(e). *See also United States v. Shakur*, 817 F.2d 189, 194-95 (2d Cir. 1987); *United States v.*

3   *Quartermaine*, 913 F.2d 910, 916 (11th Cir. 1990).

4        As to the first factor—the risk of flight—even without the proposed bail package

5   discussed below, cases recognize that the opportunity to flee is not equivalent to proclivity to flee.

6   *See United States v. Himler*, 797 F.2d 156, 162 (3d Cir. 1986) (reversing detention order and

7   finding that the "[m]ere opportunity for flight is not sufficient grounds for pretrial detention.").

8        Mr. Konigseder's conduct prior to this case—fails to offer even a scintilla of evidence

9   suggesting that he has the proclivity or inclination to flee.  In fact, he voluntarily waived

10  extradition in order to come to the United States to deal with the charges.  Without the proclivity

11  to flee, not even an opportunity to flee would warrant pretrial detention.

12       The Bail Reform Act further provides that if conditions are to be applied, they must be the

13  "least restrictive" required. 18 U.S.C. § 3142(c)(1)(B). *See also United States v. Price*, 773 F.2d

14  1526, 1528 (11th Cir. 1985). The Government bears the burden on both elements. *Shakur*, 817

15  F.2d at 195.  Accordingly, even if the Court were to find a "flight risk," that would be only the

16  beginning of the analysis, not the end. "[T]he standard is reasonably assure appearance, not

17  'guarantee' appearance, and detention can be ordered on this ground only if 'no condition or

18  combination of conditions will reasonably assure the appearance.'" *United States v. Fortna*, 769

19  F.2d 243, 250 (5th Cir. 1985) (quoting the Bail Reform Act) (emphasis in original). If the

20  government needed to show merely that release conditions could "guarantee" a defendant's

21  appearance, "the burden on the government in most cases to show a defendant's dangerousness

22  and flight propensity would be lessened considerably[.]" *United States v. Orta*, 760 F.2d 887, 892

23  (8th Cir. 1985). And finally, as the Eighth Circuit has explained, "[t]he structure of the [Bail

24  Reform Act] mandates every form of release be considered before detention may be imposed."

25  *Orta*, 760 F.2d at 892 (emphasis added).

26       In *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985), the Court of Appeals

27  confirmed that "[r]elease pending trial is governed by the Bail Reform Act of 1984 which . .

28  mandates release of a person facing trial under the least restrictive condition or combination of

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

MOTION FOR PRETRIAL RELEASE
CR-00-000517

conditions that will reasonably assure the appearance of the person as required."  In *Motamedi*, the Court reversed a detention order although defendant was an Iranian citizen who had access to large amounts of money in foreign nations and he stood accused of exporting military items to Iran.  The situation involving Mr. Konigseder is much more favorable, however.

### III.    THE BAIL PACKAGE PROPOSED BY MR.KONIGSEDER IS SUFFICIENT TO "REASONABLY ASSURE HIS APPEARANCE" UNDER SECTION 3142(g).

#### A.  The Bail Package Offered by Mr. Konigseder.

There is no "one size fits all" approach to bail. Here, there exist several reasonable conditions that the Court could impose upon Mr. Konigseder's release, and would satisfy the statutory mandate. These conditions include:

1.  Mr. Konigseder will provide an unsecured $50,000 personal recognizance bond collateralized by $10,000 in cash to be deposited with the Court.

2.  Mr. Konigseder will reside at                              prior to trial which is located approximately 19 miles from the courthouse.

3.  Mr. Konigseder shall be monitored by an ankle bracelet by the Government or any private agency approved by the U.S. Marshal (USMS), FBI or any agency deemed appropriate by the Court. Mr. Konigseder may leave his residence for attorney visits, court appearances, walks to maintain his medical appointments and religious services upon approval by Pretrial Services. The cost of the electronic monitoring shall be borne solely by Mr. Konigseder.

4.  Mr. Konigseder shall surrender any and all passports to the Court and Pretrial Services Office.

5.  Mr. Konigseder will submit himself to pretrial reporting and/or monitoring as required by the Court.

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

MOTION FOR PRETRIAL RELEASE
CR-00-000517

The above conditions are sufficient to satisfy the statutory mandate that the judicial officer take care to select "the least restrictive . . . condition, or combination of conditions" that will reasonably assure appearance. 18 U.S.C. § 3142(c)(1)(B) (emphasis added).

**B.     Neither the Charges Against Mr. Konigseder Nor His Citizenship Merit a Contrary Result.**

Nor is a contrary result mandated by the charges against the accused and his citizenship. Such factors must be considered among others. *See, e.g., United States v. Chimurenga*, 760 F.2d 400, 403 (2d Cir. 1985) (such factors among others to be considered).' While relevant, such factors are outweighed by the absence of any indication Mr. Konigseder has the proclivity to flee.

**1.     The Criminal Charges Are Not Controlling.**

Without dismissing the seriousness of the allegations in this case, the weight of the evidence is the least important of the factors to be taken into account in deciding conditions of release. *United States v. Motamedi*, 767 F2.d at 1408.  In this case, the charges more than twenty years old and therefore likely difficult to prove at trial.  Moreover, the CEO of the company at issue in the indictment, Phillip E. White, was convicted and sentenced to a grand total of 60 days in prison for allegedly more egregious conduct.  While important, do not ameliorate the mandatory nature of § 3142(e).

Although they should be "take[n] into account," bail is still mandated unless "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" Id. at § 3142(e) (emphasis added).

**2.     German Citizenship Does Not Make Mr. Konigseder A "Serious" Flight Risk.**

The Government contends that Mr. Konigseder is a flight risk because he is a German national facing serious charges, and Germany will not extradite its own citizens. That argument amounts to a *de facto* presumption that the citizens of every country that will not extradite to the U.S. should be detained. There are approximately 80 countries that fit this description. This is not the law. Rather, the law requires that the Government affirmatively prove, by a preponderance of the evidence specific to a given defendant, that there is "a serious risk that [the defendant] will flee." 18 U.S.C. § 3142(f)(2)(A).

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

MOTION FOR PRETRIAL RELEASE
CR-00-000517

1    After applying the Section 3142(g) factors, multiple courts reviewing bail requests from

2    similarly-situated defendants have granted bail with appropriate conditions. Many of these cases

3    have involved foreign citizens.

4    In *Truong Dinh Hung v. United States*, 439 U.S. 1326 (1978) (Brennan, J.) (granting bail),

5    the defendant was denied bail because he was a citizen of Vietnam who had no permanent

6    residence in the United States, he had been convicted of transmitting classified information to the

7    Vietnamese ambassador in Paris, and the United States would have no means to procure his

8    return for sentencing if he returned to Vietnam. 439 U.S. at 1327. Justice Brennan nevertheless

9    found that while such considerations "suggest opportunities for flight, they hardly establish any

10   inclination on the part of the applicant to flee." *Id.* at 1329. Hung's ties to the United States

11   included his close relationship with his sister and the equity in his sister's house that had been

12   posted as collateral for the bond called for a continuation of bail at $250,000.

13   Mr. Konigseder's citizenship is, therefore, not a controlling factor. Instead, this Court

14   should look to the fact that Mr. Konigseder, charged with a non-violent crime, voluntarily

15   surrendered to the court in the United States, waiving extradition, and is willing to abide by

16   conditions established by the Court.  These factors compel the finding that Mr. Konigseder is not

17   a flight risk. Pretrial release under reasonable bond conditions is therefore appropriate in this

18   case.

19   ## V.    CONCLUSION

20   For the aforementioned reasons, the application for bail should be granted.

21   Dated:  October 17, 2019                    Respectfully submitted,

22                                               Squire Patton Boggs (US) LLP

23

24                                               By:/s/ *Gabriel Colwell*
                                                             Gabriel Colwell
25                                               Attorneys for Defendant
                                                 WALTER KONIGSEDER
26

27

28

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

MOTION FOR PRETRIAL RELEASE
CR-00-000517

010-8866-4456/1/AMERICAS

# EXHIBIT A

CLOSED,RELATE

# U.S. District Court
## California Northern District (San Francisco)
## CRIMINAL DOCKET FOR CASE #: 3:02-cr-00375-CRB All Defendants

Case title: USA v. White

Date Filed: 11/21/2002
Date Terminated: 05/26/2004

---

Assigned to: Judge Charles R. Breyer

### Defendant (1)

**Phillip E. White**
*TERMINATED: 05/26/2004*

represented by **Elliot Remsen Peters**
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415-391-5400
Fax: 415-397-7188
Email: epeters@keker.com
*TERMINATED: 05/26/2004*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| Pending Counts | Disposition |
| --- | --- |
| 15:77x, 18:2 False statements in registration statement; aiding, abetting and willfully causing (8) | 60 days upon release two yrs supervised release; 500 hrs community service, fine $10,000.00 assessment $100.00 |

**Highest Offense Level (Opening)**

Felony

| Terminated Counts | Disposition |
| --- | --- |
| 15:78 j(b) and 78ff and 17 CFR 240.10b-5 Fraud in connection with purchase and sale of securities, 18:2 Aiding, abetting, and willfully causing (1) | dismissed |
| 15:78 m(b) and 78ff(a) and 17 CFR 240.13b2-1, 18:2 Falsification of accounting records; aiding, abetting and willfully causing (2-3) | dismissed |

10

| | |
|---|---|
| 15:78m(b)(2) and 78ff(a) and 17 CFR 240.13b2-2, 18:2 False statements to accountants; aiding, abetting, and willfully causing (4) | dismissed |
| 18:1341, 1343 and 2 Wire and mail fraud; deprivation of right to honest services; aiding, abetting and willfully causing (5-7) | dismissed |

**Highest Offense Level (Terminated)**

Felony

**Complaints**                                          **Disposition**

None

---

**Plaintiff**

| | | |
|---|---|---|
| **USA** | represented by | **Patrick David Robbins**<br>Shearman & Sterling LLP<br>535 Mission Street, 25th Floor<br>San Francisco, CA 94105<br>415-616-1100<br>Fax: 415-616-1199<br>Email: probbins@shearman.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 11/21/2002 | 1 | INDICTMENT by AUSA Patrick D. Robbins. Counts filed against Phillip E. White (1) count(s) 1, 2-3, 4, 5-7, 8 (lsk, COURT STAFF) (Entered: 11/22/2002) |
| 11/22/2002 | | SUMMONS issued as to Phillip E. White arraignment set for 9:30 11/26/02 for Phillip E. White before Mag. Judge Elizabeth D. Laporte (lsk, COURT STAFF) (Entered: 11/22/2002) |
| 11/26/2002 | 2 | SUMMONS executed upon Phillip E. White on 11/22/02 (lsk, COURT STAFF) (Entered: 11/27/2002) |
| 11/26/2002 | 3 | MINUTES: filed on Nov. 26, 2002 before Mag. Judge Elizabeth D. Laporte; first appearance of Phillip E. White, Attorney present; Trial setting hearing will be held at 11:00 12/20/02 for Phillip E. White before Judge Susan Illston , dft Phillip E. White arraigned; not guilty plea entered; Attorney present (Tape No.: 02-84) (lsk, COURT STAFF) (Entered: 11/27/2002) |
| 11/26/2002 | 4 | Unsecured PR $1,000,000.00 Bond by Phillip E. White by Mag. Judge Elizabeth D. Laporte (lsk, COURT STAFF) (Entered: 11/27/2002) |

11

| 11/27/2002 | 5 | PROOF OF SERVICE by defendant Phillip E. White (lsk, COURT STAFF) (Entered: 12/02/2002) |
|---|---|---|
| 11/27/2002 | 6 | NOTICE by defendant Phillip E. White of related case(s) C02-5538 JL, C97-1289 CRB, C00-517 CRB, C00-3668 CRB as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 12/02/2002) |
| 11/27/2002 | 7 | PROOF OF SERVICE by defendant Phillip E. White (lsk, COURT STAFF) (Entered: 12/02/2002) |
| 11/27/2002 | 8 | NOTICE by defendant Phillip E. White of related case(s) C02-5538 JL, C97-1289 CRB, C00-517 CRB, C00-3668 CRB (lsk, COURT STAFF) (Entered: 12/02/2002) |
| 11/27/2002 | 9 | PROOF OF SERVICE by defendant Phillip E. White (lsk, COURT STAFF) (Entered: 12/02/2002) |
| 11/27/2002 | 10 | NOTICE by defendant Phillip E. White of related case(s) C02-5538 JL, C97-1289 CRB, C00-517 CRB, C00-3668 CRB (lsk, COURT STAFF) (Entered: 12/02/2002) |
| 11/27/2002 | 11 | PROOF OF SERVICE by defendant Phillip E. White (lsk, COURT STAFF) (Entered: 12/02/2002) |
| 11/27/2002 | 12 | NOTICE by defendant Phillip E. White of related case(s) C02-5538 JL, C97-1289 CRB, C00-517 CRB, C00-3668 CRB (lsk, COURT STAFF) (Entered: 12/02/2002) |
| 11/27/2002 | 13 | PROOF OF SERVICE by defendant Phillip E. White (lsk, COURT STAFF) (Entered: 12/02/2002) |
| 11/27/2002 | 14 | NOTICE by defendant Phillip E. White of related case(s) C02-5538 JL, C97-1289 CRB, C00-517 CRB, C00-3668 CRB (lsk, COURT STAFF) (Entered: 12/02/2002) |
| 12/04/2002 | 15 | NOTICE by Plaintiff USA of related case(s) C02-5538 JL, CR00-517 CRB, C00-3668 CRB, C97-1289 CRB as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 12/04/2002) |
| 12/05/2002 | 16 | ORDER by Judge Charles R. Breyer granting related case notice [15-1] related to C02-5538, C97-1289, CR00-517 C00-3668 CRB Case reassigned to Judge Charles R. Breyer (lsk, COURT STAFF) Modified on 12/09/2002 (Entered: 12/09/2002) |
| 12/16/2002 | 17 | CLERK'S NOTICE status hearing will be held at 2:15 1/8/03 for Phillip E. White before Judge Charles R. Breyer (lsk, COURT STAFF) (Entered: 12/19/2002) |
| 12/17/2002 | 18 | LETTER, dated 12/16/02, from Elliot R. Peters, Esq. to Patrick D. Robbins, AUSA, setting status conference for 1/15/03 at 2:15 p.m., as to Phillip E. White (rhw, COURT STAFF) (Entered: 12/23/2002) |
| 12/17/2002 | | Docket Modification (Administrative) to letter [18-1]: status hearing set for 2:15 1/15/03 as to Phillip E. White (rhw, COURT STAFF) (Entered: 12/23/2002) |
| 01/02/2003 | 19 | ORDER by Judge Charles R. Breyer to exclude time from 12/20/02 to 1/8/03 from Speedy Trial Act calculations as to Phillip E. White (rhw, COURT STAFF) (Entered: 01/03/2003) |
| 01/08/2003 | 20 | MINUTES: (filed on 1/9/03) Status conference held before Judge Charles R. Breyer. Further status hearing will be held at 2:15 p.m. on 3/5/03 for Phillip E. White, before Judge Charles R. Breyer. ( C/R: Debra Pas) (rl, COURT STAFF) (Entered: 01/13/2003) |

| 02/18/2003 | 22 | PROOF OF SERVICE by defendant Phillip E. White (lsk, COURT STAFF) (Entered: 02/21/2003) |
| 02/18/2003 | 23 | Ex parte APPLICATION for issuance of subpoenas duces tecum by defendant Phillip E. White (lsk, COURT STAFF) (Entered: 02/21/2003) |
| 02/18/2003 | 97 | PLEA Agreement as to Phillip E. White (rhw, COURT STAFF) (Entered: 12/24/2003) |
| 02/19/2003 | 21 | Amended PROOF OF SERVICE by Phillip E. White (lsk, COURT STAFF) (Entered: 02/21/2003) |
| 02/27/2003 | 24 | Partial OPPOSITION by Plaintiff USA to defendant ex parte application for issuance of subpoenas duces tecum as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 02/28/2003) |
| 03/03/2003 | 25 | Status conference STATEMENT by defendant Phillip E. White (lsk, COURT STAFF) (Entered: 03/04/2003) |
| 03/03/2003 | 26 | ORDER by Judge Charles R. Breyer for issuance of subpoenas duces tecum under federal rules of criminal procedure 17(c) as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 03/04/2003) |
| 03/04/2003 | 27 | PROOF OF SERVICE by defendant Phillip E. White (lsk, COURT STAFF) (Entered: 03/05/2003) |
| 03/05/2003 | 29 | MINUTES: filed on 3/6/03 before Judge Charles R. Breyer ; status hearing will be held at 2:30 4/24/03 for Phillip E. White before Judge Charles R. Breyer. Obj. to subpoena compliance filed by 3/28/03; resp. 4/11/03; reply 4/18/03 (C/R: Joan Columbini) (lsk, COURT STAFF) (Entered: 03/10/2003) |
| 03/06/2003 | 28 | EX parte APPLICATION for issuance of subpoena duces tecum by defendant Phillip E. White (lsk, COURT STAFF) (Entered: 03/07/2003) |
| 03/06/2003 | 30 | Ex parte APPLICATION for issuance of subpoena duces tecum by defendant Phillip E. White (lsk, COURT STAFF) (Entered: 03/10/2003) |
| 03/06/2003 | 31 | ORDER by Judge Charles R. Breyer granting application [30-1] for subpoena duces tecum issued as to Philip White (lsk, COURT STAFF) (Entered: 03/10/2003) |
| 03/10/2003 | 35 | LETTER dated 3/10/3 from Eumi Lee to Judge Breyer as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 03/12/2003) |
| 03/11/2003 | 32 | LETTER dated 3/6/3 from Eumi Lee to Mr. Semel as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 03/12/2003) |
| 03/11/2003 | 33 | LETTER from Eumi Lee to General Counsel Fujitsu dated 3/6/3 as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 03/12/2003) |
| 03/11/2003 | 34 | LETTER from Eumi Lee to Ms. Baskins dated 3/6/3 as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 03/12/2003) |
| 03/14/2003 | 40 | LETTER dated March 11, 2003, from general counsel fo IBM regarding subpoena duces tecum served on IBM. (rl, COURT STAFF) (Entered: 03/25/2003) |
| 03/18/2003 | 36 | Affidavit of SERVICE by defendant Phillip E. White (lsk, COURT STAFF) (Entered: 03/19/2003) |

| 03/18/2003 | 37 | PROOF OF SERVICE by defendant Phillip E. White (lsk, COURT STAFF) (Entered: 03/19/2003) |
| 03/18/2003 | 38 | PROOF OF SERVICE by defendant Phillip E. White (lsk, COURT STAFF) (Entered: 03/19/2003) |
| 03/18/2003 | 39 | PROOF OF SERVICE by defendant Phillip E. White (lsk, COURT STAFF) (Entered: 03/19/2003) |
| 03/21/2003 | 41 | PROOF OF SERVICE by defendant Phillip E. White of subpoena. (rl, COURT STAFF) (Entered: 03/25/2003) |
| 03/21/2003 | 42 | PROOF OF SERVICE by defendant Phillip E. White of subpoena. (rl, COURT STAFF) (Entered: 03/25/2003) |
| 04/07/2003 | 43 | Ex parte APPLICATION for issuance of subpoena duces tecum by defendant Phillip E. White (lsk, COURT STAFF) (Entered: 04/08/2003) |
| 04/08/2003 | 44 | ORDER by Judge Charles R. Breyer for issuance of subpoena duces tecum under federal rules of criminal procedure 17(c) as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 04/09/2003) |
| 04/11/2003 | 45 | NOTICE of entry of order by defendant Phillip E. White (lsk, COURT STAFF) (Entered: 04/14/2003) |
| 04/18/2003 | 46 | PROOF OF SERVICE by defendant Phillip E. White (lsk, COURT STAFF) (Entered: 04/21/2003) |
| 04/18/2003 | 47 | PROOF OF SERVICE by defendant Phillip E. White (lsk, COURT STAFF) (Entered: 04/21/2003) |
| 04/22/2003 | 48 | Status conference STATEMENT by defendant Phillip E. White (lsk, COURT STAFF) (Entered: 04/23/2003) |
| 04/24/2003 | 49 | MINUTES: filed on 4/24/3 before Judge Charles R. Breyer ; status hearing will be held at 2:15 5/28/03 for Phillip E. White before Judge Charles R. Breyer. Parties file update joint statement for next status conference. Court grant time excluded 4/24/3 - 5/28/3 (C/R: Claudia Blake) (lsk, COURT STAFF) (Entered: 04/28/2003) |
| 05/05/2003 | 50 | Ex parte APPLICATION for issuance of subpoena duces tecum by defendant Phillip E. White (lsk, COURT STAFF) (Entered: 05/07/2003) |
| 05/05/2003 | 51 | ORDER by Judge Charles R. Breyer granting application [50-1] for subpoena duces tecum as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 05/07/2003) |
| 05/07/2003 | 52 | NOTICE of entry of order by defendant Phillip E. White (lsk, COURT STAFF) (Entered: 05/08/2003) |
| 05/12/2003 | 53 | Notice of motion and MOTION before Judge Charles R. Breyer by defendant Phillip E. White to strike surplusage from indictment pursuant to federal rules of criminal procedure 7(d) memorandum of points and authorities in support thereof (lsk, COURT STAFF) (Entered: 05/13/2003) |
| 05/13/2003 | 54 | PROOF OF SERVICE by defendant Phillip E. White (lsk, COURT STAFF) (Entered: 05/14/2003) |

| 05/14/2003 | 55 | MOTION before Judge Charles R. Breyer by USA as to defendant Phillip E. White for order authorizing depositions in Japan, France and United Kingdom pursuant to federal rule 15 (lsk, COURT STAFF) (Entered: 05/15/2003) |
| 05/14/2003 | 56 | DECLARATION by Assistant United States Attorney Patrick D. Robbins on behalf of Plaintiff USA re motion for order authorizing depositions in Japan, France and United Kingdom pursuant to federal rule 15 [55-1] as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 05/15/2003) |
| 05/22/2003 | 57 | STIPULATION and ORDER by Judge Charles R. Breyer status hearing will be held at 6/10/03 for Phillip E. White ; before Judge Charles R. Breyer (lsk, COURT STAFF) (Entered: 05/23/2003) |
| 05/30/2003 | 58 | NOTICE of withdrawal of motion for order authorizing rule 15 deposition of witness Klaus Schuback, by Plaintiff USA as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 06/03/2003) |
| 06/03/2003 | 59 | OPPOSITION by defendant Phillip E. White to motion for order authorizing depositions in Japan, France and United Kingdom pursuant to federal rule 15 [55-1] (lsk, COURT STAFF) (Entered: 06/04/2003) |
| 06/03/2003 | 60 | DECLARATION by Elliot Peters on behalf of defendant Phillip E. White re opposition [59-1] (lsk, COURT STAFF) (Entered: 06/04/2003) |
| 06/04/2003 | 61 | OPPOSITION by Plaintiff USA to as to defendant Phillip E. White motion to strike surplusage from indictment pursuant to federal rules of criminal procedure 7(d) [53-1] (lsk, COURT STAFF) (Entered: 06/10/2003) |
| 06/06/2003 | 62 | PROOF OF SERVICE by defendant Phillip E. White (lsk, COURT STAFF) (Entered: 06/10/2003) |
| 06/06/2003 | 63 | REPLY by defendant Phillip E. White re motion to strike surplusage from indictment pursuant to federal rules of criminal procedure 7(d) [53-1] (lsk, COURT STAFF) (Entered: 06/10/2003) |
| 06/10/2003 | 65 | ORDER by Judge Charles R. Breyer for authorizing deposition of witness Tetsu Kimura in Japan pursuant to federal rule of criminal procedure 15 as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 06/16/2003) |
| 06/10/2003 | 66 | ORDER by Judge Charles R. Breyer for speedy trial date as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 06/16/2003) |
| 06/10/2003 | 67 | ORDER by Judge Charles R. Breyer for tolling speedy trial date as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 06/16/2003) |
| 06/10/2003 | 68 | ORDER by Judge Charles R. Breyer for speedy trial date as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 06/16/2003) |
| 06/10/2003 | 70 | MINUTES: filed on June 10, 2003 before Judge Charles R. Breyer ; status hearing will be held at 2:15 7/23/03 for Phillip E. White ; before Judge Charles R. Breyer. Court signs order authorizing deposition of witness - rule 15. Deft motion denied (C/R: Kathy Wyatt) (lsk, COURT STAFF) Modified on 06/16/2003 (Entered: 06/16/2003) |
| 06/13/2003 | 64 | ORDER by Mag. Judge Elizabeth D. Laporte directing clerk return defendant passport for purposes of rule 15 deposition in Tokyo Japan as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 06/16/2003) |

15

| 06/13/2003 | 69 | OBJECTION regarding deposition of Tetsu Kimura by defendant Phillip E. White as to defendant Phillip E. White (lsk, COURT STAFF) Modified on 06/16/2003 (Entered: 06/16/2003) |
| 07/08/2003 | 71 | STIPULATION and ORDER by Judge Charles R. Breyer status hearing continued to 11:00 7/25/03 for Phillip E. White ; before Judge Charles R. Breyer (kcw, COURT STAFF) (Entered: 07/10/2003) |
| 07/09/2003 | 72 | PROOF OF SERVICE by defendant Phillip E. White of order [71-2] (kcw, COURT STAFF) (Entered: 07/10/2003) |
| 07/25/2003 | 73 | ORDER by Judge Charles R. Breyer for authorizing Japanese citizen Tetsu Kimura in U.S. as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 07/28/2003) |
| 07/25/2003 | 74 | ORDER by Judge Charles R. Breyer for tolling of speedy trial date as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 07/28/2003) |
| 07/25/2003 | 76 | MINUTES: filed on 7/25/03 before Judge Charles R. Breyer ; status hearing will be held at 2:00 9/5/03 for Phillip E. White ; Jury trial set for 8:30 1/20/04 for Phillip E. White ; pre-trial conference will be held 2:30 1/8/04 for Phillip E. White ; before Judge Charles R. Breyer ( C/R: L. Mankiewicz) (lsk, COURT STAFF) (Entered: 07/30/2003) |
| 07/28/2003 | 75 | ORDER by Mag. Judge Elizabeth D. Laporte for tolling speedy trial date 11/25 - 12/20 as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 07/30/2003) |
| 08/19/2003 | 77 | MOTION before Judge Charles R. Breyer by USA as to defendant Phillip E. White for issuance of letters rogatory (scu, COURT STAFF) (Entered: 08/20/2003) |
| 08/28/2003 | 79 | LETTER from Eumi Lee to Mr. Robbins re issuance of letter rogatory, dated 8/25/03 as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 09/03/2003) |
| 08/29/2003 | 78 | RESPONSE to government's motion for letter rogatory to principality of Monaco by defendant Phillip E. White (lsk, COURT STAFF) (Entered: 09/03/2003) |
| 09/05/2003 | 80 | ORDER by Judge Charles R. Breyer granting U.S. motion for letter rogatory to principality of Monaco as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 09/11/2003) |
| 10/02/2003 | 81 | STIPULATION and ORDER by Judge Charles R. Breyer to exclude time 1/20/4, set for trial 1/20/04 as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 10/06/2003) |
| 11/12/2003 | 82 | Supplemental MOTION before Judge Charles R. Breyer by USA as to defendant Phillip E. White for order authorizing deposition of witness William James in United Kingdom pursuant to federal rule 15 (lsk, COURT STAFF) (Entered: 11/14/2003) |
| 11/12/2003 | 83 | DECLARATION by AUSA Patrick Robbins on behalf of Plaintiff USA re motion for order authorizing deposition of witness William James in United Kingdom pursuant to federal rule 15 [82-1] as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 11/14/2003) |
| 11/18/2003 | 84 | Ex parte APPLICATION for issuance of subpoena duces tecum by defendant Phillip E. White (lsk, COURT STAFF) (Entered: 11/20/2003) |
| 11/19/2003 | 85 | ORDER by Judge Charles R. Breyer granting application [84-1] for Phillip White (lsk, COURT STAFF) (Entered: 11/20/2003) |

16

| 11/21/2003 | 86 | NOTICE of entry of order by defendant Phillip E. White (lsk, COURT STAFF) (Entered: 11/24/2003) |
| 11/26/2003 | 87 | OPPOSITION by defendant Phillip E. White as to defendant Phillip E. White motion for order authorizing deposition of witness William James in United Kingdom pursuant to federal rule 15 [82-1] (lsk, COURT STAFF) (Entered: 12/02/2003) |
| 12/03/2003 | 88 | MINUTES: filed on 12/3/3 before Judge Charles R. Breyer ; court grants issuance of subpoena as to defendant Phillip E. White ( C/R: Debra Pas) (lsk, COURT STAFF) Modified on 12/05/2003 (Entered: 12/05/2003) |
| 12/03/2003 | 89 | PROOF OF SERVICE by defendant Phillip E. White (lsk, COURT STAFF) (Entered: 12/05/2003) |
| 12/05/2003 | 90 | ORDER by Judge Charles R. Breyer for authorizing deposition of witness William James in United Kingdom as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 12/10/2003) |
| 12/05/2003 | 91 | LETTER to Judge Breyer dated 12/4/03 as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 12/10/2003) |
| 12/05/2003 | 92 | Certificate of SERVICE by Plaintiff USA as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 12/10/2003) |
| 12/12/2003 | 93 | MINUTES: filed on 12/12/03 before Judge Charles R. Breyer ; status hearing held and continued to 9:30 12/18/03 as to Phillip E. White ( C/R: Debra Pas) (rhw, COURT STAFF) (Entered: 12/24/2003) |
| 12/18/2003 | 94 | MINUTES: filed on 12/18/03 before Judge Charles R. Breyer ; Phillip E. White enters guilty plea; Phillip E. White (1) count(s) 8 , sentencing hearing will be held at 2:15 3/24/04 as to Phillip E. White ( C/R: Diane Skillman) (rhw, COURT STAFF) (Entered: 12/24/2003) |
| 12/18/2003 | 95 | APPLICATION FOR PERMISSION TO ENTER PLEA OF GUILTY by Phillip E. White (rhw, COURT STAFF) (Entered: 12/24/2003) |
| 12/18/2003 | 96 | ORDER by Judge Charles R. Breyer accepting plea as to Phillip E. White (rhw, COURT STAFF) (Entered: 12/24/2003) |
| 01/12/2004 | 98 | LETTER to Judge Breyer dated 1/9/04 as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 02/04/2004) |
| 02/02/2004 | 99 | LETTER to Judge Breyer dated 1/21/04 as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 02/04/2004) |
| 02/10/2004 | 100 | LETTER to Judge Breyer dated 2/2/4 as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 02/11/2004) |
| 03/22/2004 | 101 | LETTER to Judge Breyer dated 3/13/04 as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 03/23/2004) |
| 03/23/2004 | 102 | STIPULATION and ORDER by Judge Charles R. Breyer sentencing hearing will be held at 2:15 5/12/04 for Phillip E. White ; before Judge Charles R. Breyer (lsk, COURT STAFF) (Entered: 03/26/2004) |
| 04/07/2004 | 103 | STIPULATION and ORDER by Judge Charles R. Breyer for Mr. Peters authorized to return the passport to Mr. White for sole purpose of having it renewed as to defendant |

| | | Phillip E. White (lsk, COURT STAFF) (Entered: 04/08/2004) |
|---|---|---|
| 04/16/2004 | 104 | LETTER to Judge Breyer dated 4/14/04 as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 04/19/2004) |
| 04/26/2004 | 105 | LETTER to Judge Breyer re accounting fraud, dated 4-26-04 as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 04/28/2004) |
| 04/27/2004 | 106 | LETTER to Patrick Robbins AUSA, dated 4/23/04 from Elliot R. Peters as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 05/03/2004) |
| 05/05/2004 | 107 | SENTENCING memorandum filed by USA as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 05/06/2004) |
| 05/05/2004 | 108 | DECLARATION by Patrick Robbins on behalf of Plaintiff USA re sentence [107-1] as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 05/06/2004) |
| 05/05/2004 | 109 | LETTER to Judge Breyer re sentence memorandum, dated May 5, 2004 from Elliot R. Peters as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 05/07/2004) |
| 05/05/2004 | 110 | SENTENCING memorandum filed by Phillip E. White (lsk, COURT STAFF) (Entered: 05/07/2004) |
| 05/13/2004 | 111 | LETTER from SEC to Judge Breyer dated 5/11/04 as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 05/17/2004) |
| 05/14/2004 | 112 | MINUTES: filed on 5/14/04 before Judge Charles R. Breyer ; sentencing hearing will be held at 9:00 5/26/04 for Phillip E. White ; before Judge Charles R. Breyer ( C/R: Diane Skillman) (lsk, COURT STAFF) (Entered: 05/19/2004) |
| 05/21/2004 | 113 | Supplemental SENTENCING memorandum filed by Phillip E. White (lsk, COURT STAFF) (Entered: 05/24/2004) |
| 05/25/2004 | 114 | RESPONSE to supplemental sentencing memorandum by Plaintiff USA as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 05/28/2004) |
| 05/26/2004 | 115 | ORDER by Judge Charles R. Breyer sealing as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 05/28/2004) |
| 05/26/2004 | 116 | MINUTES: filed on 5/26/04 before Judge Charles R. Breyer; sentencing Phillip E. White (1) count(s) 8. 60 days upon release two yrs supervised release; 500 hrs community service, fine $10,000.00 assessment $100.00 , terminating case (C/R: J. Bishop) (lsk, COURT STAFF) (Entered: 05/28/2004) |
| 05/26/2004 | 117 | JUDGMENT and Commitment issued as to Phillip E. White Phillip E. White (1) count(s) 8 Judge Charles R. Breyer (cc: all counsel) ( Date Entered: 5/28/04) (lsk, COURT STAFF) (Entered: 05/28/2004) |
| 05/26/2004 | | Docket Modification (Administrative) to dismissing counts Phillip E. White (1) count(s) 1, 2 -3 , 4 , 5 -7 . dismissed (lsk, COURT STAFF) (Entered: 05/28/2004) |
| 08/06/2004 | 118 | JUDGMENT and Commitment returned executed as to Phillip E. White on 8/2/04 USP Lompoc (lsk, COURT STAFF) (Entered: 08/09/2004) |
| 09/01/2004 | 119 | REQUEST by defendant Phillip E. White for approval community service plan (lsk, COURT STAFF) (Entered: 09/02/2004) |

| 09/01/2004 | 120 | Payment Record Card: Payment of fine in the amount of 1,000.00 paid on 8/25/04 on behalf of defendant Phillip E. White . (lsk, COURT STAFF) (Entered: 09/02/2004) |
| 09/01/2004 | 121 | Payment Record Card: Payment of special assess. in the amount of 100.00 paid on 8/25/04 on behalf of defendant Phillip E. White . (lsk, COURT STAFF) (Entered: 09/02/2004) |
| 09/28/2004 | 122 | ORDER by Judge Charles R. Breyer for community service plan as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 09/29/2004) |
| 12/14/2004 | 123 | REPORTER'S TRANSCRIPT; Date of proceedings: 6/10/03 ( C/R: Katherine Wyatt) minutes [70-2] as to defendant Phillip E. White (scu, COURT STAFF) (Entered: 12/15/2004) |
| 05/23/2005 | 124 | REQUEST by defendant Phillip E. White for early termination of supervised release (lsk, COURT STAFF) (Entered: 05/26/2005) |
| 05/25/2005 | 125 | ORDER by Judge Charles R. Breyer for early termination of supervised release as to defendant Phillip E. White (lsk, COURT STAFF) (Entered: 05/31/2005) |
| 05/31/2005 | 126 | NOTICE of entry of defendant's request for early termination of supervised release by defendant Phillip E. White (lsk, COURT STAFF) (Entered: 06/01/2005) |
| 11/02/2007 | 127 | Sealed Document as to Phillip E. White (lsk, COURT STAFF) (Filed on 11/2/2007) (Entered: 11/07/2007) |
| 08/22/2008 | 128 | ORDER as to Phillip E. White of withdrawal of arrest warrant. Signed by Judge Hon. Vaughn R. Walker on 8/22/08. (lsk, COURT STAFF) (Filed on 8/22/2008) (Entered: 08/25/2008) |
| 09/19/2008 | 129 | Sealed Document as to Phillip E. White (lsk, COURT STAFF) (Filed on 9/19/2008) (Entered: 09/23/2008) |

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 08/19/2019 09:58:27 | | |
| PACER Login: | ls0036:2590255:0 | Client Code: | 3000.010 |
| Description: | Docket Report | Search Criteria: | 3:02-cr-00375-CRB |
| Billable Pages: | 7 | Cost: | 0.70 |

19

# EXHIBIT B

1    KEVIN V. RYAN (CSBN 118321)
     United States Attorney

2

3    ROSS W. NADEL (CSBN 87940)
     Chief, Criminal Division

4    PATRICK D. ROBBINS (CSBN 152288)
     MILES F. EHRLICH (PA BAR 73912)

5    Assistant United States Attorneys

6      450 Golden Gate Avenue, Box 36055
      San Francisco, California 94102

7      Telephone: (415) 436-7200

8    Attorneys for the United States of America

*FILED*

DEC 18 2003

**RICHARD W. WIEKING**
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

9

10           UNITED STATES DISTRICT COURT

11           NORTHERN DISTRICT OF CALIFORNIA

12             SAN FRANCISCO DIVISION

13

14    UNITED STATES OF AMERICA,     )    No. CR-02-0375-CRB
                                  )

15        Plaintiff,            )    PLEA AGREEMENT
                                  )

16             v.              )
                                  )

17    PHILLIP E. WHITE,             )
                                  )

18        Defendant.          )
     _____ )

19

20        I, Phillip E. White, and the United States Attorney's Office for the Northern District of

21    California (hereafter "the government") enter into this written plea agreement (the "Agreement")

22    pursuant to Rules 11(c)(1)(A) and (c)(1)(C) of the Federal Rules of Criminal Procedure:

23    <u>The Defendant's Promises</u>

24        1.      I agree to plead guilty to Count Eight of the captioned Indictment charging me

25    with making false statements in a Registration Statement filed with the Securities and Exchange

26    Commission under the Securities Act of 1933, in violation of 15 U.S.C. § 77x. I agree that the

27    elements of the offense and the maximum penalties are as follows: (1) I knowingly and willfully;

28    (2) in a registration statement filed under the Securities Act of 1933; (3) made or caused to be

PLEA AGREEMENT

made untrue statements of material fact, or omitted to state material facts required to be stated to make the statements therein not misleading.

| | | | |
|---|---|---|---|
| | a. | Maximum prison sentence | 5 years |
| | b. | Maximum fine | $ 250,000 or twice the gross gain or gross loss, whichever is greater |
| | c. | Maximum supervised release term | 3 years |
| | d. | Mandatory special assessment | $ 100 |
| | e. | Restitution | any losses caused |

2.    I agree that I am guilty of the offense to which I will plead guilty, and I agree that the following facts are true:

Until late July 1997, I was the Chief Executive Officer and Chairman of the Board of Directors of the Informix Corp (Informix).  Informix was a publicly traded company.  Its shares were registered with the SEC and traded on the NASDAQ national stock market.  On July 16, 1997, I signed and Informix filed an SEC Form S-8 with the Securities and Exchange Commission, registering 12 million shares of company stock for distribution to Informix employees.  The Form S-8 incorporated Informix's 1996 financial statements by reference.  At the time I signed the S-8 and caused it to be filed with the SEC, I knew that it was false and misleading with respect to the material fact that the 1996 financial statements were not accurate, but rather should have been restated to reflect a material amount of revenue that should have been reversed related to a 1996 Fujitsu transaction.

3.    I agree to give up all rights that I would have if I chose to proceed to trial, including the rights to a jury trial with the assistance of an attorney; to confront and cross-examine government witnesses; to remain silent or testify; to move to suppress evidence or raise any other Fourth or Fifth Amendment claims; to any further discovery from the government; and to pursue any affirmative defenses and present evidence.

4.    I agree to waive my right to appeal my conviction, sentence, judgment, and orders of the Court.

5.    I agree not to file any collateral attack on my conviction or sentence, including a

PLEA AGREEMENT                2

1  petition under 28 U.S.C. § 2255, at any time in the future after I am sentenced, except for a claim

2  that my constitutional right to the effective assistance of counsel was violated.

3        6.      The parties agree that the offense is governed by the Sentencing Guidelines in

4  effect in July 1997 and covered by Guideline § 2F1.1.  The parties agree for purposes of the

5  Guideline calculations in this Agreement that any loss to shareholders cannot reasonably be

6  estimated under Guideline § 2F1.1(b)(1).  The parties agree that the appropriate sentence is one

7  that is permitted under Zone B, Level 10 or lower, and that each of them is free to argue for a

8  specific sentence within or below that Level.  I therefore agree not to ask the Court to withdraw

9  my guilty plea at any time after it is entered unless the Court, before sentencing and pursuant to

10  Federal Rule of Criminal Procedure 11(c)(1)(C), indicates that it intends to impose a sentence

11  greater than that permitted by Zone B, Level 10 (regardless of the actual offense level determined

12  by the Court), in which case I understand that I will be entitled to withdraw my plea.  I further

13  understand that the government agrees that it may not withdraw from this agreement based on

14  any sentence imposed by the Court.

15        7.      Because of the parties' agreement that any loss cannot reasonably be estimated,

16  the parties further agree that no restitution order is appropriate.  I agree that I will make a good

17  faith effort to pay any fine or forfeiture I am ordered to pay.  Before or after sentencing, I will,

18  upon request of the Court, the government, or the U.S. Probation Office, provide accurate and

19  complete financial information, submit sworn statements and give depositions under oath

20  concerning my assets and my ability to pay, surrender assets I obtained as a result of my crimes,

21  and release funds and property under my control in order to pay any fine or forfeiture.  I agree to

22  pay the special assessment at the time of sentencing.

23        8.      I agree not to commit or attempt to commit any crimes before sentence is imposed

24  or before I surrender to serve any sentence.  I also agree not to violate the terms of my pretrial

25  release (if any); intentionally provide false information to the Court, the Probation Office,

26  Pretrial Services, or the government; or fail to comply with any of the other promises I have

27  made in this Agreement.  I agree that, if I fail to comply with any promises I have made in this

28  Agreement, then the government will be released from all of its promises in this agreement,

PLEA AGREEMENT            3

including those set forth in paragraphs 11 and 12 below, but I will not be released from my guilty plea.

        9.     I agree that this Agreement contains all of the promises and agreements between the government and me, and I will not claim otherwise in the future.

        10.    I agree that this Agreement binds the U.S. Attorney's Office for the Northern District of California only, and does not bind any other federal, state, or local agency.

The Government's Promises

        11.    The government agrees to move to dismiss the remaining charges pending against the defendant in the captioned indictment if the defendant does not withdraw his guilty plea under paragraph 6.

        12.    The government agrees not to file or seek any additional charges against the defendant that could be filed as a result of the investigation that led to the captioned indictment.

The Defendant's Affirmations

        13.    I confirm that I have had adequate time to discuss this case, the evidence, and this Agreement with my attorney, and that he has provided me with all the legal advice that I requested.

        14.    I confirm that while I considered signing this Agreement, and at the time I signed it, I was not under the influence of any alcohol, drug, or medicine.

        15.    I confirm that my decision to enter a guilty plea is made knowing the charges that have been brought against me, any possible defenses, and the benefits and possible detriments of

//
//
//
//
//
//
//
//

PLEA AGREEMENT          4

1  proceeding to trial.  I also confirm that my decision to plead guilty is made voluntarily, and no

2  one coerced or threatened me to enter into this agreement.

3

4

5  Dated: _12-18-03_

6  PHILLIP E. WHITE
   Defendant

7

8  KEVIN V. RYAN
   United States Attorney

9

10 Dated: _12/18/03_

11 PATRICK D. ROBBINS
   MILES F. EHRLICH

12 Assistant United States Attorneys

13     I have fully explained to my client all the rights that a criminal defendant has and all the

14 terms of this Agreement.  In my opinion, my client understands all the terms of this Agreement

15 and all the rights he is giving up by pleading guilty, and, based on the information now known to

16 me, his decision to plead guilty is knowing and voluntary.

17

18 Dated: _12/18/03_

19 JOHN W. KEKER
   Attorney for Defendant

20

21

22

23

24

25

26

27

28

PLEA AGREEMENT                          5

# EXHIBIT C

1   KEVIN V. RYAN (CSBN 118321)
    United States Attorney
2
    ROSS W. NADEL (CSBN 87940)
3   Chief, Criminal Division

4   PATRICK D. ROBBINS (CSBN 152288)
    MILES F. EHRLICH (PA BAR 73912)
5   Assistant United States Attorneys

6       450 Golden Gate Avenue, 11th Floor
        San Francisco, California  94102
7       Telephone:  (415) 436-7200

8   Attorneys for Plaintiff

9                  UNITED STATES DISTRICT COURT

10               NORTHERN DISTRICT OF CALIFORNIA

11                   SAN FRANCISCO DIVISION

12  UNITED STATES OF AMERICA,          )   No. CR-02-0375-CRB
                                       )
13              Plaintiff,             )   UNITED STATES' SENTENCING
                                       )   MEMORANDUM
14        v.                           )
                                       )   Date:  May 12, 2004
15  PHILLIP E. WHITE,                  )   Time:  2:30 p.m.
                                       )   Place:  Courtroom No. 8, 19th Floor
16              Defendant.             )
    _____)

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

I.      INTRODUCTION

II.     FACTUAL BACKGROUND ........................................... 3

        A.      Charges and Guideline Calculation ................................ 3

        B.      White's Relevant Conduct ........................................ 3

                1.      The Fujitsu "Side Agreement" and White's "Memorandum
                        of Understanding" ........................................ 5

                2.      The Hewlett-Packard/Deutsche Telecom "Side Agreement" ......... 7

                3.      White Signs and Files the SEC Form S-8's, Representing the
                        Accuracy of Informix's 1996 Financial Statements ................. 8

III.    APPLICABLE GUIDELINE CALCULATION AND
        SENTENCING PRINCIPLES ........................................ 9

        A.      White's Guideline Calculation ..................................... 9

        B.      White's Concealment of the Fujitsu and HP Side Agreements and Lies
                to the Auditors Are "Relevant Conduct" and Support a Three Month
                Sentence Of Imprisonment ...................................... 10

        C.      White's Conduct Included "More Than Minimal Planning" ............... 12

        D.      A Sentence of Imprisonment, Not Probation, Is Appropriate ............. 13

TABLE OF AUTHORITIES

Statutes and Rules

15 U.S.C. § 77x . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9

15 U.S.C. § 78j . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

15 U.S.C. § 78m(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 1341 and 1343 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

17 C.F.R. § 240.13b2-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

17 C.F.R. § 240.13b2-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

U.S.S.G. § 1B1.3(a)(1)-(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

U.S.S.G. § 1B1.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-12

U.S.S.G. § 2F1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

U.S.S.G. § 3B1.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

U.S.S.G. § 3E1.1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

1  KEVIN V. RYAN (CSBN 118321)
   United States Attorney
2
   ROSS W. NADEL (CSBN 87940)
3  Chief, Criminal Division

4  PATRICK D. ROBBINS (CSBN 152288)
   MILES F. EHRLICH (PA BAR 73912)
5  Assistant United States Attorneys

6     450 Golden Gate Avenue, 11th Floor
      San Francisco, California  94102
7     Telephone:  (415) 436-7200

8  Attorneys for Plaintiff

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11               SAN FRANCISCO DIVISION

12  UNITED STATES OF AMERICA,          )   No. CR-02-0375-CRB
                                       )
13              Plaintiff,             )   UNITED STATES' SENTENCING
                                       )   MEMORANDUM
14        v.                           )
                                       )   Date:  May 12, 2004
15  PHILLIP E. WHITE,                  )   Time:  2:30 p.m.
                                       )   Place: Courtroom No. 8, 19th Floor
16              Defendant.             )
    _____)

17

18                    I. INTRODUCTION

19        The United States asks the Court to impose a three month sentence of imprisonment on

20  the defendant Phillip E. White, the middle of the applicable guideline range.  We do not make

21  this recommendation lightly.  This case is not about personal greed or dramatic market losses.

22  White's offense conduct, however, reflects the kind of high-level corporate wrongdoing that has

23  afflicted so many public companies, and which continues to undermine the investing public's

24  faith in our securities markets.  White's decision to commit securities fraud savaged the

25  reputation, and contributed to the downfall, of Informix, one of the country's most successful and

26  promising high-technology companies.  His decision to commit securities fraud also caused

27  tangible harm to the company's employees and customers.  He ignored the law, ignored his

28  responsibilities as an officer, and purposefully deceived others whose job it was to protect

    investors and the integrity of Informix's financial reporting.

                              30

1    Simply stated, lying to the SEC and the investing public about financial results to falsely

2   maintain the appearance of a company's success is a crime that requires strong punishment.  A

3   probationary sentence would not be sufficiently punitive and would severely undermine the

4   principle of general deterrence.  Ultimately, the sentence in this case should not turn on whether

5   White himself will re-offend.  He probably will not.  Instead, it should be imposed with an eye

6   toward the hundreds of other officers of public companies in the Bay Area who are undoubtedly

7   watching this case.  They will ask themselves what the cost to them will be if they, like White,

8   decide to report false financial results in an effort to stave off a restatement or some other

9   impending financial disaster for their company.  This sentence should also constitute a

10   punishment that is proportional to the harm White caused to the company's reputation, to its

11   employees,  and to investor confidence more broadly.

12    A sentence of probation will send the message that the criminal conduct at issue in this

13   case – involving false statements to finance staff, auditors, the SEC, and investors by the highest

14   officer at a public company – is simply not a major offense.  A mid-range sentence, on the other

15   hand, with a term of actual imprisonment, will aid immensely in ensuring that others faced with

16   White's situation will choose not to follow White's path.  Indeed, experience teaches that white

17   collar offenders fear jail more than anything – more even than the personal and professional

18   failure associated with reporting truthful, albeit disappointing, financial results for the company

19   under their management.

20    Community service alone, even when combined with the maximum fine,  will not

21   dissuade others from committing this crime.  Such a sentence is unlikely to alter the cost-benefit

22   analysis for an executive faced with the immense pressure of trying to please Wall Street and

23   maintain his personal reputation and position in the high-technology community.  A fine  – even

24   the maximum fine of $250,000 –  is too easily paid by White or others holding a similar position.

25   Like many senior executives in the computer and software industry, White's net worth is

26   staggering — $43,000,000.  Presentence Report ¶ 53.  In this context, a fine of $250,000 is too

27   easily dismissed as a cost of doing business.  For deterrence to be served, only a term of

28   imprisonment will suffice.  Consequently, we ask that the Court impose the recommended three

1   month sentence.

2                     II.  FACTUAL BACKGROUND

3   A.      Charges and Guideline Calculation

4              On November 21, 2002, the Grand Jury returned an eight count Indictment against

5   defendant White.  Count one charged securities fraud in violation of 15 U.S.C. §§ 78j(b); counts

6   two and three charged falsification of accounting records in violation of 15 U.S.C. § 78m(b) and

7   17 C.F.R. § 240.13b2-1; count four charged lying to auditors in violation of 15 U.S.C. § 78m(b)

8   and 17 C.F.R. § 240.13b2-2; counts five through seven charged mail and wire fraud in violation

9   of 18 U.S.C. § 1341 and 1343; and count eight charged White with knowingly and willfully

10  making materially false statements in a Registration Statement filed with the Securities and

11  Exchange Commission in violation of 15 U.S.C. § 77x.  On December 18, 2003, White pled

12  guilty to count eight.  His sentencing is set for May 12, 2004.

13             The United States has received and reviewed the Final Presentence Report ("PSR")

14  prepared by Probation Officer Charles W. Mabie.  It agrees with the PSR's final Sentencing

15  Guidelines calculations of a final offense level of 8, a Criminal History Category of I, a

16  Guidelines range of 0 to 6 months, a supervised release term of three years, and a $10,000 fine.

17  As discussed above and as set forth in section III below, the United States recommends that the

18  Court sentence White to the middle of the Guideline range, or three months imprisonment.

19  B.      White's Relevant Conduct

20             In 1996 and 1997, White was the CEO, President and Chairman of the Board of Directors

21  of Informix Corp, a Menlo Park-based database software company traded on NASDAQ.  In

22  August and September 1997, Informix restated its 1994, 1995 and 1996 revenue and profits,

23  reducing total revenue for 1996 by $200 million and revealing that its previously reported $97

24  million in profits were in fact a $73 million loss.  White fraudulently prevented the restatement

25  from taking place for a one month period.  He did so by concealing improperly booked

26  transactions from Informix's independent auditor, Ernst & Young (E&Y), the Securities and

27  Exchange Commission (SEC), and the investing public.  In July 1997, White also made

28  affirmative misrepresentations to the SEC, E&Y and the investing public – in a publicly filed

1   Registration Statement and in representation letters he signed – about the validity of

2   Informix's 1996 financial statements.

3        During the months leading up to July 1997, E&Y discovered an increasing percentage

4   of 1996 sales transactions that Informix should not have booked as revenue.  When White

5   signed Informix's 1996 10-K in April 1997, he was aware that E&Y did not agree with all of

6   Informix's decisions concerning the revenue Informix had reported in its 1996 financial

7   statements.  E&Y had informed White and others of these disagreements and differences of

8   opinion, which were reflected in a document known as the "Summary of Audit Differences"

9   ("SAD").  At the time White signed the Form 10-K, E&Y did not consider the items and

10  amounts on the SAD to be substantial enough to preclude it from issuing an unqualified audit

11  report.

12       To validly book software revenue under Generally Accepted Accounting Principles

13  (GAAP),  Informix's sales to customers had to be final and irrevocable.  At the time of the

14  1996 10K, White had been told by E&Y that if Informix gave any concessions to any

15  customer relating to a 1996 transaction, Informix would be unable to recognize the revenue

16  from that contract until the payments from the customer were actually received.  Before E&Y

17  would issue its unqualified audit report for Informix's 1996 financial statements, the auditor

18  demanded that Informix's management (including White) provide it with an explicit

19  representation that none of the revenue Informix had recognized was subject to forfeiture,

20  refund, or other concession.  Informix provided that representation to E&Y in a letter signed

21  by White as Informix's Chief Executive Officer.

22       Shortly after White signed Informix's 10-K, Informix and E&Y learned of  possible

23  "side agreements" granting concessions to several Informix customers in the United

24  Kingdom.  Informix had recognized revenue for these contracts in its 1996 financial

25  statements.  E&Y told White that if a review of those contracts showed that the revenue

26  should not have been recognized in 1996, it could result in an increase in the SAD to the

27  level where E&Y would insist that Informix restate its 1996 financial statements.  At the

28  completion of the review, however, E&Y concluded that the increases in the SAD caused by

1  the UK side agreements did not require a restatement.  E&Y told White and other members

2  of senior management that the discovery of additional side agreements related to 1996

3  contracts would likely increase the SAD to the point where E&Y would insist that Informix

4  restate its 1996 financial results.

5         In July 1997, Mr. White participated in the issuance and concealment of an improper

6  "side agreement" that negated a $4.7 million transaction with one Informix customer in Japan

7  – Fujitsu Limited ("Fujitsu") –  and learned of but concealed his knowledge of another "side

8  agreement" relating to a $6 million transaction with a second customer in Germany – Hewlett

9  Packard Corporation ("HP").  The revenue from both transactions had been recorded in 1996.

10 The side agreements in each case precluded Informix from recognizing the revenue,

11 materially undermined the accuracy of the company's financial statements, and necessitated

12 an immediate restatement.  Despite this fact, in mid-July 1997, White signed and Informix

13 filed two SEC Form S-8's in which he falsely reaffirmed the validity the 1996 financial

14 statements.

15         1.     The Fujitsu "Side Agreement" and White's "Memorandum of Understanding"

16         The 1996 contract with Fujitsu was signed in August 1996, was for one year, and

17 stipulated that all payments to Informix for its products would be made within the time

18 period of the contract.  In late June 1997, however, the president of Informix-Japan admitted

19 that he had provided a "side agreement" to Fujitsu extending Fujitsu's time to pay through

20 September 1998.  A copy of the side agreement is attached to the accompanying Declaration

21 of AUSA Patrick D. Robbins (Robbins Dec.) as Exhibit (Ex.) 1.  This secret extension

22 violated Informix's revenue recognition policy and GAAP.  E&Y told White that it planned

23 to add the Fujitsu transaction to the SAD, which would require Informix to restate its 1996

24 financial statements.

25         White asked E&Y whether Informix could avoid a restatement if Fujitsu rescinded the

26 side agreement.  E&Y agreed that if a senior Fujitsu executive agreed to rescind, Informix

27 would not have to restate its 1996 financial statements.  E&Y suggested that White himself

28 fly to Japan to obtain the recision of the Fujitsu "side agreement."

1    E&Y and Informix's Controller Karen Blasing also agreed that the company would

2    have to postpone the filing of a proposed SEC Form S-8, registering new shares of Informix

3    stock for sale to company employees.  They discussed the postponement with White, telling

4    him that the filing would not be appropriate until they had learned whether the Fujitsu side

5    agreement had been rescinded and whether the financial statements would have to be

6    restated.  E&Y also told White that the recision of the Fujitsu "side agreement" had to be

7    "clean," and that he could give no consideration to Fujitsu in order to obtain it.  White

8    traveled to Japan on July 3, 1997.

9    On July 4, 1997, White met with representatives of Fujitsu in Tokyo.  White asked

10   Fujitsu for the recision.  Fujitsu responded by proposing for the first time that Informix buy

11   Fujitsu products and services.  After the meeting, Informix drafted and White signed a

12   recision agreement dated July 4 (Robbins Dec. Ex. 2).  Informix also prepared and White

13   signed a Memorandum of Understanding ("MOU"), also dated July 4, stating that Informix

14   agreed to purchase $3 million in unspecified products and services from Fujitsu within one

15   year, or to pay Fujitsu $3 million in cash (Robbins Dec. Ex. 3).  The $3 million in the MOU

16   roughly corresponded to the remaining amount due to Informix under the August 1996

17   software license sales contract with Fujitsu.

18   White returned to the United States and provided Fujitsu's recision letter to

19   Informix's acting financial officer (Matt O'Rourke) and Controller Karen Blasing, as well as

20   to the E&Y audit partner Neil McGrath.  White never disclosed the fact that he had agreed to

21   pay $3 million to Fujitsu in exchange for the recision.  Informix's acting financial officer

22   Matthew O'Rourke telephoned White to ask how the negotiations went.  White stated that he

23   obtained the recision.  When O'Rourke asked White what the recision cost, White responded:

24   "just a lot of aggravation."  After reviewing the recision letter, E&Y and the Controller

25   Blasing determined that it was acceptable and decided not to de-book the transaction and not

26   to restate Informix's 1996 financial statements.  At the same time, White signed and arranged

27   to fax the finalized MOU to Japan.  He did not provide a copy to E&Y or to anyone in the

28

1  United States but David Stanley, Informix's General Counsel.[1]

2      2.    The Hewlett-Packard/Deutsche Telecom "Side Agreement"

3      On December 31, 1996, Informix's Munich, Germany office entered into a $6.4

4  million transaction with Hewlett Packard (HP) relating to software licenses HP hoped to sell

5  to Deutsche Telecom (DT).  At the same time, Informix's sales person in Germany signed a

6  secret "side agreement" (Robbins Dec. Ex. 4) giving HP the right to cancel the deal and get

7  its money back if DT did not buy the licenses.  Although Informix booked the entirety of the

8  $6.4 million as revenue, the side agreement precluded revenue recognition.  In fact, HP

9  exercised the side agreement and cancelled the transaction in February 1997.  White learned

10  of the side agreement in early July 1997, and failed to disclose its existence to the auditors.

11      On approximately June 26, 1997, White and Informix's Vice-President for Worldwide

12  Operations, Kenneth Coulter met with HP executive William Russell at HP's headquarters.

13  While the purpose of the meeting was to discuss general issues between the companies, Mr.

14  White and Mr. Coulter raised the fact that HP had not made payments on the DT transaction.

15  Russell agreed to investigate and get back to Mr. White.  Mr. Russell then sought information

16  about the transaction from, among others, HP's European Controller Klaus Schuback

17      On July 2, 1997, Coulter met with Schuback about the DT transaction.  The content of

18  the meeting was memorialized in an internal HP memorandum and e-mail (Robbins Dec.

19  Exs. 5-6).  Schuback told Coulter that HP had a side agreement that allowed it to cancel the

20  DT deal and obtain a refund.  Coulter responded that such a "side agreement" would trigger a

21  restatement and effectively "kill [Informix's] chances to survive." Id. Ex. 5-7.

22      According to HP's Russell, on July 7, 1997, White and Coulter met again with him at

23

24  _____

25      [1] According to Stanley, when he received the MOU from Japan, he noticed that the date
   (July 4) matched the date of Fujitsu's recision letter.  Stanley believed that the MOU was
26  "probably not right," and probably was a quid pro quo for the recision.  He claims that he
   assumed others had seen it.  During the following week (July 7), Stanley states that he questioned
27  White.  According to Stanley, White told Stanley that the MOU was not connected to the recision
28  and was "something he was doing with Fujitsu."  Stanley accepted this explanation.

GOV'T SENT. MEM.                                  -7-
No. CR-02-0375-CRB

1  HP's headquarters, in an effort to persuade HP not to enforce the side agreement.[2/]  Schuback

2  and others at HP helped brief Russell for the July 7 meeting with White (Robbins Dec. Ex. 6-

3  7), providing factual background on the side agreement and Informix's financial situation,

4  and recommending against granting any kind of recision to Informix.  According to Russell,

5  at the meeting White offered to ensure the sale of any remaining software licenses from the

6  contract for HP, a concession which by itself would have precluded revenue recognition.

7  Russell nevertheless declined to rescind the side agreement.  Later in July, White attempted

8  to persuade Russell's superior at HP, Richard Belluzzo, to rescind the side agreement.

9  Belluzzo declined as well (Robbins Dec. Ex. 8).  Thus, although HP executives told White

10 directly that HP intended to enforce the side agreement, and would not rescind it, White

11 never informed E&Y or Informix's finance staff of its existence until the day they learned of

12 the Fujitsu MOU, on July 30 (the same day the Informix Board asked White to resign).

>        3.      White Signs and Files the SEC Form S-8's, Representing the
>                Accuracy of Informix's 1996 Financial Statements

14      Either of the transactions, when added to other void transactions already discovered

15 and on the SAD, put Informix past the "materiality" threshold and required a restatement.

16 Despite this fact, on July 16, 1997, White signed and caused Informix to file a Form S-8 with

17 the SEC, registering 12 million shares the company planned to offer to its employees.  In the

18 filing, White falsely affirmed that Informix's 1996 financial statements were accurate.  In

19 connection with the S-8, White also signed a "representation letter" to E&Y, falsely

20 affirming the following:

>        1.      "We have responded fully to all inquiries made to us by your review."
>
>        2.      "We recognize that, as members of management of the Company, we are
>                responsible for the fair presentation of its unaudited consolidated financial
>                statements . . . for 1996 (incorporated by reference in the Form S-8).  Such
>                financial statements were prepared from the books and records of Informix
>                Corporation in conformity with generally accepted accounting principles
>                applied on the same basis as that used for the audited consolidated financial
>                statements of Informix Corporation as of and for the three years in the period

---

[2/] An entry for the meeting at HP's headquarters appears in the personal calendars for
White, Coulter and Russell.

ending December 31, 1996, and reflect all adjustments necessary for a fair presentation of the consolidated financial statements."

3.  "All material transactions have been properly recorded in the accounting records underlying these financial statements."

4.  "<u>Subsequent Events</u>. No events or transactions have occurred since the date of our previous letter or are pending, other than those reflected or disclosed in the filing, that would have a material effect on the audited financial statements and the unaudited interim financial information incorporated by reference in the Form S-8 or that are of such significance in relation to the Company's affairs to require mention in a note to the audited financial statements . . . so as to make them not misleading regarding the financial position . . . of the Company." (Robbins Dec. Ex. 9).

Informix's Controller Karen Blasing learned of the Fujitsu MOU at the end of July from Informix's legal assistant in Japan (Robbins Dec. Ex. 3). When she confronted White, he falsely told her that he had been negotiating a services contract with Fujitsu for a long time and had finalized the deal during the meeting in Japan. Blasing described the Fujitsu recision and MOU at a July 30 Board meeting. The Board immediately asked White for his resignation. The company then proceeded to restate its 1996 financial statements.

III.  APPLICABLE GUIDELINE CALCULATION<br>AND SENTENCING PRINCIPLES

A.   White's Guideline Calculation

The parties agreed upon most aspects of the appropriate Guideline calculation in the Plea Agreement, and the United States specifically agrees with the PSR's final calculation. Under the Plea Agreement, the parties agreed "that the offense is governed by the Sentencing Guidelines in effect in July 1997 and covered by Guideline § 2F1.1." Plea Agreement ¶ 6. The parties further agreed "for purposes of the Guideline calculations in this Agreement that any loss to shareholders cannot reasonably be estimated under Guideline § 2F1.1(b)(1)." The parties therefore agreed "that the appropriate sentence is one that is permitted under Zone B, Level 10 or lower, and that each of them is free to argue for a specific sentence within or below that Level." Id.

The base offense level for a violation of the 15 U.S.C. § 77x, the relevant provision of the 1933 Securities Act prohibiting the filing of a false Registration Statement, is six. Guideline § 2F1.1. The United States agrees with the PSR that the offense entailed "more than minimal planning" under § 2F1.1(b)(2)(A), and therefore that White should receive a two level upward

1  adjustment, to level eight.  The offense also involved White's abuse of a position of trust under §

2  3B1.3, therefore the offense level is increased another two levels, to ten.  White has accepted

3  responsibility under § 3E1.1(a), and is entitled to a two level downward adjustment.  His final

4  offense level is eight.  With a Criminal History Category of I, his guideline range is zero to six

5  months imprisonment.

6  B.     White's Concealment of the Fujitsu and HP Side Agreements and Lies to the Auditors
          Are "Relevant Conduct" and Support a Three Month Sentence Of Imprisonment

7          In determining the applicability of enhancements and in imposing sentence, the

8  Guidelines[3/] direct the Court to consider all "relevant conduct," that is, "all acts and omissions

9  committed, aided, abetted, counseled, commanded, procured, or willfully caused by the

10  defendant" that "were part of the same course of conduct or common scheme or plan as the

11  offense of conviction."  Guidelines § 1B1.3(a)(1)-(2).  The Guidelines expressly state that the

12  nature of the defendant's conduct is relevant to establishing the appropriate sentence _within_ the

13  applicable Guideline range.  _Id._ § 1B1.4 ("In determining the sentence to impose within the

14  guideline range . . . the court may consider, without limitation, any information concerning the

15  background character and conduct of the defendant, unless otherwise prohibited by law.").

16          White's concealment of the Fujitsu MOU and false filing of the Forms S-8 – the facts to

17  which White agreed in the Plea Agreement – are egregious enough by themselves to justify a

18  sentence greater than probation.  His actions were deceptive, and violated every expectation of

19  trust and integrity placed upon a Chief Executive Officer at a public company.  The MOU was a

20  direct betrayal of the company's finance officials in the United States, who had specifically told

21  White that he could not give any concessions in negotiating a recision of the 1996 Fujitsu side

22  agreement, and who had withheld approval of the S-8 stock registration documents until they

23  learned whether Fujitsu would grant such a "clean" recision.  White utterly failed them.  When he

24  asked Fujitsu for the recision in Tokyo, Fujitsu demanded payment in return and White readily

---

27      [3/] As noted, the Plea Agreement provided that the "that the offense is governed by the
Sentencing Guidelines in effect in July 1997."  Plea Agreement ¶ 6.  The Guidelines Manual at
28  that time was the 1995 edition.

1   agreed to it to avoid a restatement.

2         On his return to the U.S., White disclosed only the recision to the company's Controller,

3   its acting financial officer and its outside audit partner.  O'Rourke, the acting financial officer

4   specifically asked White what the recision had cost him, and White lied in response, saying

5   nothing but a lot of "aggravation."  Solely because White refused to admit what he had done to

6   these individuals, whom he knew were the ones responsible for deciding whether or not to

7   restate, White caused Informix to publicly affirm financial statements that were materially

8   overstated.  This is precisely the kind of conduct the anti-fraud provisions of the securities laws

9   were enacted to prevent.  Congress' desire to prevent such deception is why those laws contain

10  severe criminal penalties.  The capital markets cannot function if the investing public cannot rely

11  on the financial numbers reported by publicly-traded companies.  Investment will dry up, market

12  prices will fall, companies will fail, and the economy will suffer accordingly.

13        White's other "relevant conduct," also strongly supports a sentence of imprisonment.

14  White's lies to the auditor in the representation letter, and his concealment of the HP side

15  agreement at the same time he concealed the Fujitsu MOU, are additional crimes that warrant a

16  higher sentence even though they do not increase his offense level.  Guidelines § 1B1.4 directs

17  the Court to consider all of a defendant's crimes in determining where to sentence him within the

18  applicable range:  "A court is not precluded from taking into consideration information that the

19  guidelines do not take into account.  For example, of the defendant committed two robberies, but

20  as part of a plea negotiation entered a guilty plea to only one, the robbery that was not taken into

21  account by the guidelines would provide a reason for sentencing at the top of the guideline

22  range."  Id., commentary.

23        White's efforts to negotiate away the HP side agreement are just as serious a breach of

24  investor trust as White's conduct in the Fujitsu transaction.  At a time when he knew that any

25  additional side agreement would trigger a restatement (and just as the Fujitsu side agreement had

26  come to light), White sat across from the number three executive at HP, William Russell, and

27  listened to him refuse to rescind a written side agreement that negated $6 million of Informix's

28  1996 revenue.  White did not reveal the existence of the HP side agreement to the auditors or

GOV'T SENT. MEM.               -11-
No. CR-02-0375-CRB

1   finance staff.  Instead, through his final weeks at Informix, he attempted fruitlessly to appeal for a

2   recision from the next highest HP executive, Richard Belluzzo.

3        In addition, White lied to the company's auditors in a representation letter specifically

4   designed to ferret out the kind of information White was hiding.  Before E&Y would approve the

5   registration of an employee stock offering through the SEC Forms S-8, it required assurances

6   from Informix management that nothing had come to light since the 10K to undermine the

7   validity of Informix's last-audited financial statements.  At the time he signed the representation

8   letter in mid-July 1997, White knew facts that contradicted virtually everyone of his statements

9   in the letter.  In doing so, he frustrated the purpose of an outside audit of a publicly traded firm.

10  Auditors cannot function if they cannot trust management to tell them the truth about the

11  company's accounting and finances.

12  C.    White's Conduct Included "More Than Minimal Planning"

13       While the enhancement does not affect White's ultimate Guideline range, he nonetheless

14  should receive the two level upward adjustment for "more than minimal planning" under

15  Guidelines § 2F1.1(b)(2).  "'More than minimal planning' is deemed present in any case

16  involving repeated acts over a period of time, unless it is clear that each instance was purely

17  opportune."  Guidelines § 1B1.1 (n.1(f)).  The Guidelines also provide that an offense involves

18  more than minimal planning if "significant affirmative steps were taken to conceal the offense."

19  Id.

20       White's conduct spanned a month-long period.  He learned of the HP and Fujitsu side

21  agreements during the first days of July 1997.  He agreed to the $3 million payment to Fujitsu on

22  July 4th.  He failed to disclose the MOU to the financial staff determining whether to restate, and

23  he specifically lied to O'Rourke about the concession to Fujitsu immediately on his return.

24  White then facilitated the S-8 and stock registration he knew had been held up while he sought

25  the Fujitsu recision.  Finally, White continued to try to negotiate an improper recision of the HP

26  side agreement, without disclosing it to Informix's Controller or auditor, through the end of the

27  month.  This conduct plainly involved "repeated acts" and "affirmative steps" to conceal.  The

28  Court should therefore apply the enhancement.

GOV'T SENT. MEM.                              -12-
No. CR-02-0375-CRB

1    D.    A Sentence of Imprisonment, Not Probation, Is Appropriate

2        The Sentencing Guidelines do not support a probationary sentence in a case like this

3    because such a sentence does not adequately deter.  The applicable Guidelines Manual makes

4    clear that a sentencing range that includes probation for a first-time offender is <u>not</u> to be taken as

5    a suggestion that probation is the appropriate sentence.  To the contrary, the Guidelines state that

6    economic offenses like White's are considered "serious" offenses that, pre-Guidelines, were too

7    often the subject of probationary sentences:

8            Under pre-guidelines sentencing practice, courts sentenced to
             probation an inappropriately high percentage of offenders guilty of
9            certain economic crimes, such as theft, tax evasion, antitrust
             offenses, insider trading, fraud and embezzlement, that in the
10           Commission's view are "serious."

11           The Commission's solution to this problem has been to write
             guidelines that classify as serious many offenses for which
12           probation previously was frequently given and provide for at least a
             short period of imprisonment in such cases.  <u>The Commission</u>
13           <u>concluded that the definite prospect of prison, even though the</u>
             <u>term may be short, will serve as a significant deterrent, particularly</u>
14           <u>when compared with the pre-guidelines practice where probation,</u>
             <u>not prison, was the norm.</u>

15   Guidelines Ch. 1 Pt. A, <u>Introduction</u> 4(d) ("Probation and Split-Sentences") (emphasis added).

16
         For the reasons outlined above and in the Introduction, the Court should impose a mid-
17
     range sentence of three months in prison.  The letter to the Court from two victims of White's
18
     conduct, the SEC and Robert Finocchio (White's successor as Informix's CEO), set forth the
19
     damage White's crime caused to market integrity and to Informix's reputation and business.  The
20
     SEC's Director of Enforcement Stephen M. Cutler emphasizes the obvious fact that as CEO,
21
     White "had a fiduciary and statutory obligation to ensure that Informix's financial results were
22
     fairly presented in public filings."  His intentional decision to breach that obligation represents a
23
     "serious violation of the federal securities laws" that has contributed to the undermining of
24
     "investor confidence in our capital markets."  Robbins Dec. Ex. 10.[4]
25

26       [4]  In a recent letter to the Court, White's attorneys suggest that it is somehow improper
27   for the SEC to write to the Court.  The United States respectfully disagree that the Securities and
     Exchange Commission, the federal agency responsible for regulating the securities markets,
28                                                                                (continued...)

GOV'T SENT. MEM.                              -13-
No. CR-02-0375-CRB

1        Mr. Finocchio catalogues the harm to Informix's ability to continue as a going concern

2   after an accounting scandal made all the more serious by the direct involvement of the company's

3   former CEO.  Informix had to pay $142 million to settle a class action securities fraud suit.  Its

4   customers fled because of uncertainty over Informix's future.  The company ceased to exist when

5   its database technology was sold to IBM.  Business partners who had invested in the company

6   lost much of the value of those investments.  Mr. Finocchio also discusses the damage "at the

7   human level" brought about by White's criminal misconduct and breach of trust.  He points out

8   that talented, dedicated people had cast their lot with a promising, successful company.  Those

9   employees were eventually betrayed by a dishonest management, seeing their careers and

10  reputations damaged irreparably by their association with Informix.  Robbins Dec. Ex. 11.

11       Phillip White was not solely responsible for Informix's demise, but he played an

12  indispensable role in its decline.  "Informix" is now synonymous with "fraud" in Silicon Valley,

13  in large part because the wrongdoing rose to the very top of the company.  Lies and deception

14  cannot be acceptable business practices in any context.  When they take place at a publicly-traded

15  company, are aimed at outside auditors and investors, and are committed by the company's

16  highest executive, they merit a substantial punishment that will dissuade other, similar situated

17  officers from following the same destructive path.  In this case, that punishment should be prison.

18  DATED:  May 5, 2004          Respectfully submitted,

19                           KEVIN V. RYAN

20                           United States Attorney

21

22                           PATRICK D. ROBBINS

                             MILES F. EHRLICH

23                           Assistant United States Attorneys

24

25      [4/](...continued)

should not provide a sentencing court with its perspective regarding the relative seriousness of a

26  criminal securities violation committed by the Chief Executive Officer of a publicly traded

company.  In this particular matter, White pled guilty to lying to the SEC in a public company

27  filing required by law.  The SEC is in a unique position to address the impact of that crime, and

its views (like any other victim's) are a proper subject for the Court to consider in sentencing the

28  defendant.

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the filed UNITED STATES'
SENTENCING MEMORANDUM and the DECLARATION OF AUSA PATRICK
ROBBINS IN SUPPORT OF UNITED STATES' SENTENCING MEMORANDUM in
the case of UNITED STATES V. PHILLIP WHITE, CR 02-0375 CRB  was this date
hand delivered to:

Elliott Peters, Esq.
John Keker, Esq.
710 Sansome Street
San Francisco, CA 94111

and sent to:

Charles W. Mabie
U.S. Probation Officer
1301 Clay Street
Oakland, California 94612

I declare under penalty of perjury that the foregoing is true and correct to  the
best of my knowledge.

Executed on May 5, 2004 at San Francisco, California.

KATIE CANNULI
Legal Assistant